The document below is hereby signed.

Signed: November 8, 2019



_S Martin Teel Jr_

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
JEANNIE QUINTEROS,             )    Case No. 19-00195
                               )    (Chapter 13)
            Debtor.            )    Not for publication in
                               )    West's Bankruptcy Reporter.

MEMORANDUM DECISION AND ORDER
DENYING MOTION TO STAY PENDING APPEAL

The debtor has filed a *Motion to Stay Court's October 2, 2019 Order Pending Appeal and for an Immediate Administrative Stay* ("*Motion for Stay*") (Dkt. No. 99).  The *Motion to Stay* seeks a stay of the order granting relief from the automatic stay to permit Capital Ventures International, LLC ("Capital Ventures") to proceed with a pending foreclosure action pursuant to a *Mortgage* against the real property located at 1596 Salerno Circle, Weston FL (the "Property").  I will deny the *Motion for Stay* for the following reasons.

I

SUMMARY

The facts clearly warranted this court's conclusion that cause exists to lift the automatic stay to permit enforcement of

the *Mortgage* against the Property by whoever is entitled to
enforce the *Mortgage*.  The debtor questions whether Capital
Ventures is the entity entitled to enforce the *Mortgage*.
However, the proceeding on the motion for relief from the
automatic stay was not a plenary proceeding to determine that
question, and only a summary proceeding.  The evidence in the
summary proceeding adequately established that Capital Ventures
has a colorable claim that it is the entity entitled to pursue
enforcement of the *Note* and *Mortgage*, such that it has standing
to seek relief from the automatic stay to pursue in a state court
foreclosure proceeding a determination of its right to seek to
enforce the *Note* and *Mortgage*.  Once Capital Ventures established
such standing, the evidence clearly required a conclusion that
relief from the automatic stay was appropriate under both 11
U.S.C. § 362(d)(1) (for cause based on there being no bankruptcy
purpose served by keeping the automatic stay in place) and 11
U.S.C. § 362(d)(2) (based on there being no equity in the
Property and the Property not being necessary for an effective
reorganization).  Whatever defenses the debtor's co-owner may
have (and that the debtor does not have) against the foreclosure
action are irrelevant to whether relief from the automatic stay
regarding pursuing the claim against the debtor and against the
debtor's interest in the Property was appropriate.  Finally, I
properly rejected as frivolous the debtor's contention that

2

Capital Ventures' failure to file a proof of claim bars it from
pursuing relief from the automatic stay.  There is thus no
probability of success on appeal.  The appeal is plainly
frivolous and intended to delay Capital Ventures in pursuing its
asserted right to foreclose.

The other factors regarding a motion for a stay pending
appeal weigh in favor of Capital Ventures.  The debtor is not
being irreparably harmed when the Property has no equity and when
the debtor can raise in the state court foreclosure action any
defenses against foreclosure.  Based on the greater value of
money received now instead of later, a stay of this court's order
would harm Capital Ventures because there is no equity in the
Property from which interest accruals on the secured debt could
be paid.  Finally, based on comity and respect for state law with
respect to the pending foreclosure action in state court, and the
absence of any bankruptcy purpose to be served by keeping the
foreclosure action stayed, the public interest weighs in favor of
denying the *Motion for Stay*.

II

FACTS

A.   The *Note* and the Assignments of the *Mortgage*

The debtor primarily lives in Washington D.C., but travels
periodically to Florida, and asserts in her *Motion to Stay* that

3

the Property is her homestead.[1]  The Property was the subject of
a *Note* executed by the debtor's ex-husband, Ronnie Quinteros
("Ronnie"), on November 2, 2006, and secured by the *Mortgage* on
the Property executed by both the debtor and Ronnie.  The debtor
and Ronnie were divorced in 2009.  The parties entered into a
*Marriage Settlement Agreement* that provided that Ronnie would
quitclaim the Property to the debtor within 10 days of the final
dissolution of the marriage.  Ronnie never quitclaimed the
Property to the debtor.  Despite Ronnie's obligation to quitclaim
the Property to her, the debtor asserts in her *Motion to Stay*
that she is a one-half owner of the Property instead of the sole
owner.

        As the debtor notes (*Motion to Stay* at 5-6, citing *Carpenter
v. Longan*, 16 Wall. 271, 83 U.S. 271 (1872)), an assignment of a
note carries the mortgage with it.  *See Northup v. Reese,* 67 So.
136, 137 (1914).  As long as Capital Ventures is the assignee of
the *Note*, it matters not whether the *Mortgage* was assigned to it.
However, the debtor pointed to the assignments of the *Mortgage* in
questioning whether Capital Ventures is the holder of the *Note*.
Nothing in the assignments raises any doubt regarding Capital

---

        [1]  On her Schedule C filed as part of her amended schedules
filed in the bankruptcy case, the debtor did not claim the
Property to be exempt under 11 U.S.C. § 522 as a homestead or
otherwise.  Whether the Property is exempt as a homestead is
irrelevant to the motion for relief from the automatic stay:
under 11 U.S.C. § 522(c)(2), an unavoidable lien remains
enforceable against exempt property.

Ventures being the assignee of the *Note* or regarding its right to seek to enforce the *Note*. The *Mortgage* underwent four assignments, with the recorded assignments establishing that Capital Ventures is the current assignee of the *Mortgage* reflected in the land records applicable to the Propery:

Assignment 1: This first *Assignment of Mortgage* was executed on June 24, 2011, wherein Mortgage Electronic Systems, Inc. ("MERS"), as nominee for CitiMortgage, Inc., its successors and assigns, assigned the *Mortgage* to Castle Peak 2010-1 Loan Trust, whose address was c/o Acqura Loan Services. This first *Assignment of Mortgage* was recorded on July 12, 2011.

Assignment 2: This second *Assignment of Mortgage* was executed on August 10, 2011, wherein Castle Peak 2010-1 Loan Trust ("Castle Peak"), whose address was care of Acura Loan Services, assigned the *Mortgage* to U.S. Bank, National Association, as Trustee of Castle Peak 2010-1 Loan Trust. This *Assignment of Mortgage* was not recorded, and it is readily inferred that U.S. Bank elected to treat this second *Assignment of Mortgage* as no longer effective, and did not seek to claim rights under the *Note* once the next *Assignment of Mortgage* was executed.

Assignment 3: This third *Assignment of Mortgage* was executed on June 26, 2013, wherein Castle Peak assigned the

*Mortgage* to National Home Investors, LLC ("National Home Investors"). This *Assignment of Mortgage* was recorded on August 14, 2013.

Assignment 4: This fourth *Assignment of Mortgage* was executed on November 13, 2014, wherein National Home Investors assigned the *Mortgage* to Capital Ventures. This *Assignment of Mortgage* was recorded on January 27, 2015. The *Note* itself was endorsed in blank by CitiMortgage. An Allonge executed by Castle Peak attached to the *Note*, provided with an *Affidavit of Lost Note* filed in the state court foreclosure proceeding brought by Capital Ventures, reflects that the *Note* was to be paid to the order of National Home Investors, and another Allonge, executed by National Home Investors, makes the *Note* payable to Capital Ventures.

B.   The *Note* Became a Lost Note

Nicolas Lampariello testified at a hearing held on September 26, 2019, regarding Capital Ventures' motion for relief from the automatic stay that Capital Ventures entered into a Mortgage Assets Purchase with National Home Investors on November 6, 2014, whereby Capital Ventures purchased several nonperforming loans, including the loan to the debtor. National Home Investors represented to Capital Ventures that National Home Investors had the *Note*. However, prior to completion of the purchase, National Home Investors represented to Capital Ventures that it had lost

6

the *Note*.  National Home Investors explained that in the midst of
a foreclosure action National Home Investors was pursuing against
the debtor, the *Note* was lost by its attorney, Kahane &
Associates, P.A., which had held the *Note* as coverage counsel
since May 9, 2011 (which was shortly before the first assignment
of the *Mortgage*).  An employee of Kahane & Associates, P.A., the
last possessor of the *Note* when it was lost, executed an
*Affidavit of Lost Note* on October 6, 2014, reciting that the *Note*
was delivered to Kahane & Associates, P.A. by Acqura Loan
Services on May 9, 2011.  (Recall that in the assignment of the
*Mortgage* to it, Castle Peak was listed as having an address c/o
Acqura Loan Services.)  The *Affidavit of Lost Note* then recites
that the *Note* had then been lost sometime prior to October 6,
2014.

The debtor asserts in her *Motion for Stay* that the court
abused its discretion in permitting Lampariello to testify as to
National Home Investors' representation of the contents of the
*Affidavit of Lost Note* because such testimony is inadmissable
hearsay.  That argument is readily rejected:

- The debtor never raised an objection to the testimony
  at the hearing.  Indeed, the *Affidavit of Lost Note* is
  part of the debtor's own exhibits received into
  evidence.

- In any event, Lampariello's testimony regarding the

7

representations made by National Home Investors was
superfluous because, as is discussed further below, a
*Settlement Agreement and Release* and a *Loan
Modification Agreement*, which are binding on the
debtor, set forth sufficient evidence that Capital
Ventures is the party entitled to enforce the *Note* and
is prima facie evidence that Capital Ventures has
standing.[2]

- Even if the debtor had objected to receipt of the
affidavit into evidence, the affidavit was admissible
to show that Capital Ventures would be able to file the
*Affidavit of Lost Note* in the state court foreclosure
action as a required predicate under Florida law (if
the *Settlement Agreement and Release* and *Loan
Modification Agreement* did not exist) to proceeding
with a foreclosure action.

C.   Foreclosure Actions Against the Property

In 2008, CitiMortgage brought a foreclosure action against
the Property.  The case was voluntarily dismissed on October 16,
2009, for lack of prosecution, due to CitiMortgage's failure to
serve the debtor.

---

[2]   Upon Capital Ventures meeting this burden, the burden
shifted to the debtor under 11 U.S.C. § 362(g)(2) to show that
Capital Ventures did not have standing.  As will be discussed
below, the debtor did not put forth any evidence to meet that
burden.

U.S. Bank filed a complaint for foreclosure against the Property in state court in 2011.  National Home Investors, to whom the *Mortgage* was assigned on June 26, 2013, was substituted in place of U.S. Bank as the plaintiff.  On October 28, 2014, with the *Note* having been lost, National Home Investors filed a motion to amend the complaint to add a claim of lost note.  The state court initially denied National Home Investors' motion to amend the complaint on October 30, 2014.  National Home Investors filed a motion to reconsider, and the state court granted the motion on November 5, 2014.

National Home Investors was represented by Kahane & Associates, P.A.  Lampariello, who is a lawyer specializing in personal injury and real estate and is the sole managing member of Capital Ventures, was substituted as counsel in place of Kahane & Associates, P.A. to represent National Home Investors on December 4, 2014.

The debtor alleged that the foreclosure action was dismissed with prejudice.  However, there is no evidence to support that. The case was dismissed upon the debtor's executing a *Loan Modification Agreement* and a *Settlement Agreement and Release* with Capital Ventures, documents that called for the dismissal of the foreclosure action but preserved Capital Ventures' rights under the *Note* as modified by the *Loan Modification Agreement*.

9

Lampariello negotiated the *Settlement Agreement and Release* and the *Loan Modification Agreement* with the debtor's counsel who was representing her in the state court action.  The debtor executed the *Settlement Agreement and Release* on January 12, 2015.  Under the *Settlement Agreement and Release*, the debtor acknowledges Capital Ventures as the holder of the *Note*, and agreed to the *Loan Modification Agreement* in exchange for Capital Ventures' dismissal of the 2011 foreclosure action.  Upon execution of the *Settlement Agreement and Release*, the 2011 foreclosure action was dismissed.

The *Loan Modification Agreement*, called for by the *Settlement Agreement and Release*, was executed by the debtor on January 17, 2015.  For the following reasons, more than $400,000 is owed under the *Note* as modified by the *Loan Modification Agreement* (and more than $400,000 would be owed under the *Note* if the *Loan Modification Agreement* is treated as ineffective).  The debtor does not dispute that fact.

Under the *Loan Modification Agreement*, the annual interest rate was adjusted from a 6.375% adjustable rate to a 5.25% fixed rate, and the arrearage amount of $72,461.85 was added to the unpaid principal balance of the *Note*.  However, in return for the debtor's making a payment of $6,548.38 by January 15, 2015, the unpaid principal balance was reduced to $327,988 as of February 1, 2015 (the amount owed disregarding the $72,461.85 arrearage

amount).  As of February 1, 2015, the debtor was required to make
payments of $2,141.14 per month (consisting of a payment of
$1,811.16 for principal and interest and a payment of $329.98 for
a monthly escrow impound for property taxes), with the final
payment due in 30 years on January 1, 2045.  That $6,548.38
payment required to be made by January 15, 2015, included an
initial monthly payment of $1,811.16, an escrow installment
payment of $329.98, and a payment of 2013 taxes of $4,407.24.
The debtor made the payment of $6,548.38.  As the debtor
concedes, the debtor then made no subsequent payments on the
*Note*.  By reason of interest accruals since February 2015 (and
not taking into account late charges and fees), it is obvious
that well in excess of $400,000 is owed on the *Note* based on the
modified terms.  If the *Loan Modification Agreement* was
ineffective, the *Note* obligation would be based on the *Note*'s
original terms, with the $72,461.85 arrearage amount no longer
eliminated from the balance owed on the *Note*.  Accordingly, more
than $400,000 is owed on the *Note,* whether under the terms of the
*Loan Modification Agreement* or under the original terms of the
*Note*.

Using the modified terms of the *Note*, Capital Ventures
calculates that $460,665.89 is owed under the *Note* and *Mortgage*
as of September 30, 2019.  The debtor contends that the *Loan
Modification Agreement* was procured by fraud, but does not

contest that far in excess of $400,000 is owed on the *Note* even
if the *Loan Modification Agreement* is not effective and Capital
Ventures is not the entity entitled to enforce the *Note* and
*Mortgage*.  The Property is worth well less than $400,000, and
there is no equity in the Property.

In 2016, Capital Ventures filed a foreclosure action
regarding the Property in a Florida state court.  That action did
not go forward when the debtor informed the state court on the
day of trial that she had filed for bankruptcy.

E.   The Bankruptcy Case

The debtor filed a voluntary petition commencing this case,
under Chapter 13 of the Bankruptcy Code, on March 27, 2019.  The
debtor valued the property on her schedules at $379,573.00.  The
debtor filed an amended Chapter 13 Plan (the "*Plan*") on July 17,
2017.  The debtor indicated under Section 4.B.vii. of the *Plan*
that the liens on the Property would be paid outside of the *Plan*.

Capital Ventures did not file a proof of claim.  Lampariello
prepared a claim and gave the claim to his staff to mail out for
filing.  However, it was not mailed out.

Capital Ventures filed its *Motion for Relief From Automatic
Stay and Co-Debtor Stay as to Real Property at 1596 Salerno
Circle, Weston, FL 33327* ("*Motion of Relief From Stay*") (Dkt. No.
54) on July 19, 2019.  Capital Ventures asserted that as of May
7, 2019, the total debt owed under the *Note* was $454,570.45, with

12

$327,611.79 owed on principal alone.  The debtor's proposed *Plan*
had left the rights of holders of liens against the Property
unaltered.  As cause under 11 U.S.C. § 362(d)(1) for relief from
the automatic stay, Capital Ventures asserted that, in violation
of Capital Ventures' rights under the *Note*, the debtor had not
made payments on the *Note* after the commencement of the case.  It
further asserted that cause for stay relief existed under
§ 362(d)(2) because there was no equity in the Property and the
Property was not necessary for an effective reorganization.

The debtor filed an *Opposition to Motion for Relief from
Automatic Stay and Co-debtor Stay as to Real Property at 1596
Salerno Circle, Weston, FL 33327* (Dkt. No. 63).  Additionally,
the debtor filed a *Motion to Strike Alleged Secured Creditor
Capital Ventures International, Inc's Motion for Relief as to
Real Property at 1596 Salermo* [sic] *Circle, Weston, FL 33327*
(Dkt. No. 74) ("*Motion to Strike*"), wherein the debtor asserted
that Capital Ventures was not permitted to participate in the
bankruptcy case, and thereby obtain relief from the automatic
stay, because Capital Ventures had failed to timely file a proof
of claim.  Capital Ventures did not file an opposition to the
*Motion to Strike*, but raised an objection at the hearing.  The
court permitted the objection out of time, pursuant to Fed. R.
Bankr. P. 9006(b), finding there had been no prejudice to the
debtor.  (In any event, the *Motion to Strike* was without merit

13

for reasons discussed later.)

A hearing was held on September 26, 2019, and concluded on October 1, 2019.  At the September 26, 2019, hearing, Capital Ventures showed that the Property was worth somewhere between $312,490.00 and $379,573.00.  Moreover, the debtor admitted at the October 1, 2019, hearing that the debtor only paid the initial $6,548.38 pursuant to the *Loan Modification Agreement*, but had made no further payments on the *Note* to either Capital Ventures, or any other party.

The debtor tried to introduce William Paatalo as an expert witness as to whether Capital Ventures held the *Note*.  The court found that the issue was a legal question, to which Paatalo could not testify as an expert, but allowed Paatalo to testify as to the facts he had gathered to determine whether Capital Ventures held the *Note*.  Paatalo relied on documents that the court received into evidence.  In discussing those documents, his testimony wandered into his personal perceptions regarding the effects of those documents, perceptions that were mostly inadmissible speculation and impermissible opinion testimony, and that failed to cast any doubt on whether Capital Ventures is the holder of the *Note*.  The documents upon which Paatalo relied do *not* establish that Capital Ventures is not entitled to enforce the *Note* and the *Mortgage.*

Paatalo testified that the only date on the *Affidavit of*

14

*Lost Note* reflecting possession of the *Note* was May 9, 2011, and he treated that date as the date the *Note* was lost, because generally a lost note affidavit will give a date of when the note was last seen.  Based on that deduction, he thought the *Note* was lost before any of the assignments of the *Mortgage* took place, meaning, he thought that all the Assignments were invalid, because no assignee was a possessor of the *Note* to assign it. However, Paatalo admitted that the *Note* could have been lost sometime after May 9, 2011, and before execution of the *Affidavit of Lost Note* on October 6, 2014.

Paatalo also testified that there was no evidence of reestablishment of the *Note*.  However, reestablishment is what National Home Investors and Capital Ventures sought to achieve via their pleadings in their respective foreclosure actions.

Paatalo also pointed out that the assignments were only transfers of the *Mortgage*, not the *Note*, and there is no custodial history of the *Note* since origination.  Paatalo concluded that ownership of the *Note* starts and ends with CitiMortgage.  However, a note endorsed in blank (as this *Note* was endorsed by CitiMortgage) suffices to make the entity in possession of the note entitled to holder status to enforce the note.

Paatalo further testified that the *Note* only had an open endorsement by CitiMortgage, and the allonges provided with the

15

*Affidavit of Lost Note* Affidavit were not part of the *Note*.  If
Paatalo's view were correct, the *Note* would still be a note
endorsed in blank for which the possessor would have holder
status.

     Moreover, Paatalo testified, the allonges do not match the
assignments of the *Mortgage*: there was an unrecorded assignment
to U.S. Bank as trustee, but no assignment from U.S. Bank to
anyone.  As noted previously, however, it is readily inferred
from the lack of recordation of the assignment to U.S. Bank that
U.S. Bank elected not to be treated any longer as having any
rights to enforce the *Note* and the *Mortgage*.

     Paatalo further testified that there are no documents to
show the assignments of the *Mortgage* were executed by individuals
who were authorized to act on behalf of the purported assignors.
However, the debtor presented no evidence to show that the
individuals who executed the assignments, and purported to act
with authority, were *not* authorized to execute the assignments.

     Finally, Paatalo testified that no evidence showed that
Acqura Loan Services had the *Note* to give to Kahane & Associates,
P.A..  However, the *Affidavit of Lost Note* clearly shows that
Acqura Loan Services delivered the *Note* to Kahane & Associates,
P.A.  How Acqura Loan Services came into possession of the *Note*
would not negate that it had the *Note* to deliver.  (Moreover,
recall that in the assignment of the *Mortgage* to it, Castle Peak

                                16

was listed as having an address c/o Acqura Loan Services.  This suggests that Acqura Loan Services had a relationship with Castle Peak that would explain how it came into possesssion of the *Note* in order to be able to deliver it to Kahane & Associates, P.A.)

There was no clear error (the standard on appeal of review of factual findings) in my finding that the documents received into evidence did not show that the *Note* had not been delivered to Kahane & Associates, P.A.  The debtor remains free in Capital Ventures' foreclosure action to rely on Paatalo's testimony regarding the inferences that he thought could be drawn from the documents, however silly that testimony was.

The court entered an oral decision on the record.  The court denied the *Motion to Strike* and rejected the argument that a secured creditor must first file a proof of claim to seek relief from the automatic stay.  The court found that the debtor relied on the 14th edition of Collier on Bankruptcy, and the court could find no similar discussion in the current 16th edition of Collier on Bankruptcy.  The court further relied on *In re Tarnow*, 749 F.2d 464, 465 (7th Cir. 1984), in which Judge Posner wrote that a creditor is not required to file a proof of claim in order to look to its lien to satisfy its claim.  The court emphasized that creditors are required to file a proof of claim under the Federal Rules of Bankruptcy Procedure, including Rule 3002, to participate in receiving distributions under a plan, but Rule

17

3002 further recognizes that, consistent with 11 U.S.C. § 506(d), failure of a creditor to file a proof of claim does not void a lien on the debtor's property securing the creditor's claim.

The court granted the *Motion for Relief from Stay*, finding cause had been met under 11 U.S.C. § 362(d). In response to the debtor's challenge to standing, the court held that the *Settlement Agreement and Release* clearly gave Capital Ventures the right to enforce the *Note*. The court addressed the debtor's contention that she had been fraudulently induced to sign the *Settlement Agreement and Release* by finding that there was no evidence of fraud. The debtor was represented by counsel when she executed the *Settlement Agreement and Release*, and prior to the execution fo the *Settlement Agreement and Release*, National Home Investors had already notified the debtor that the *Note* had been lost, having filed its motion to amend its complaint in its foreclosure action to add a claim of lost note. The issue of whether the *Affidavit of Lost Note* provided Capital Ventures with the right to enforce the *Note* was an issue for the state court to decide, and Capital Ventures had established standing for the purposes of pursuing its motion for relief from the automatic stay.

III

DISCUSSION

A party seeking a stay pending appeal must show (1) the

18

likelihood that it will succeed on the merits of its appeal; (2) the likelihood it will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if a stay is granted; and (4) granting the stay is in the public interest. *S.E.C. v. Bilzerian*, 641 F. Supp. 2d 16, 19 (D.D.C. 2009).

> A.   The Debtor has Not Shown a Likelihood of Success on the Merits of his Appeal.

> > 1.   The Debtor Has Not Shown a Reason to Keep the Automatic Stay in Place.

Under 11 U.S.C. § 362(d), the court may lift the automatic stay:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

> (2) with respect to a stay of an act against property under subsection (a) of this section, if—

> > (A) the debtor does not have an equity in such property; and

> > (B) such property is not necessary to an effective reorganization.

Whether under § 362(d)(1) or § 362(d)(2), cause existed to lift the automatic stay.

There is no equity in the property, and the debtor is not making any payments toward the debt.  The debtor valued the property at $379,357.00 on her schedules.  The Broward County Florida Appraiser valued the property as having a market value of $312,490 (exclusive of costs of disposition).  The *Note* has a face value of $328,000, and the *Loan Modification Agreement* set

the value of the *Note* at $327,988.  With the debtor admitting to not making any payments beyond the $6,548.38 payment in January 2014, it is clear that the debt under the *Note* with interest and any fees is far in excess of the value of the property, even if the court found the value of the property to be the higher value of $379,357.00, as asserted by the debtor.  The debtor did not provide any evidence whatsoever to show that the debt owed on the *Note* was less than the value of the Property.

Under § 362(d)(2), there is no equity in the property, as already shown, and the debtor has not shown that the Property is necessary for an effective reorganization, an issue on which she bore the burden of proof under 11 U.S.C. § 362(g)(2).  The *Plan* provides that the *Mortgage* on the Property will be dealt with outside of the *Plan*, and, therefore, the Property is not necessary for an effective reorganization.

Relief from the automatic stay is also appropriate under § 362(d)(1).  "The automatic stay is a temporary stay pending a determination of whether there is cause to lift the stay, and such cause includes there being, as here, no reason under the Bankruptcy Code to keep the automatic stay in place." *In re Horton*, 595 B.R. 1, 2 (Bankr. D.D.C. 2019).  The debtor has not articulated any reason under the Bankruptcy Code to keep the automatic stay in place.  The debtor's *Plan* provides that the liens on the Property will be dealt with outside of the *Plan*

20

(meaning that payments under the *Plan* will not be devoted to paying liens), and does not alter the rights of the creditors holding such liens.  Although a debtor may use a Chapter 13 plan to cure arrears on a mortgage debt, the debtor's *Plan* does not propose such a treatment and the debtor does not suggest that she would be financially able to cure the *Note* arrears under a plan. Finally, there is no equity that could be realized for the benefit of the bankruptcy estate.

Accordingly, there is no bankruptcy reason to keep the automatic stay in place as to the liens on the Property. Congress did not intend that a Chapter 13 case be an indefinite purgatory preventing enforcement of a lien claim on property that has no equity when a debtor's plan fails to accord a treatment of that claim and specifies that the claim will be dealt with outside of the plan.

Moreover, as will be addressed below, concepts of comity and respect for state law warrant having the parties resolve Capital Ventures' rights regarding the *Note* in the pending state court foreclosure action in Florida.

> 2.    The Debtor has Not Shown that Capital Ventures
>        Does Not Have Standing.

The debtor challenges both the constitutional and statutory standing of Capital Ventures.  However, the debtor is confusing Capital Ventures' standing to seek relief from the automatic stay, with Capital Ventures' standing in a foreclosure action.

21

They are not the same.  For the following reasons, Capital
Ventures does have standing to bring this motion for relief from
stay.

    *Constitutional Standing*

    The Supreme Court explained in *Lujan v. Defenders of
Wildlife*, 504 U.S. 555, 560-61 (1992), that for constitutional
standing, a party must have (1) an injury in fact, (2) the injury
must be fairly traceable to the defendant's actions, and (3) the
injury must likely be redressed by a favorable decision.

    To pass the standing hurdle of litigation, Capital Ventures
must allege an injury in fact.  Capital Ventures has alleged an
injury in fact.  Capital Ventures alleges that it is entitled to
enforce the *Note*, that the debtor is not paying her obligations
under the *Note* to Capital Ventures, and because of the automatic
stay, Capital Ventures is unable to pursue its legal remedies,
*i.e.*, foreclosing on the Property.  That is sufficient to
establish injury in fact for constitutional standing to pursue a
motion for relief from the automatic stay.

    The debtor asserts that Capital Ventures cannot show an
injury in fact because Capital Ventures does not hold the *Note*;
therefore, Capital Ventures could not be harmed, because it has
no legal right to foreclose on the property, or collect on the
*Note*.  However, Capital Ventures possesses a *Settlement Agreement
and Release*, executed by, and therefore binding on, the debtor,

22

wherein the debtor acknowledges Capital Ventures as the party
entitled to enforce the *Note*.  The debtor's defense, or
counterclaim, that the *Settlement Agreement and Release* was
obtained by fraud, does not, at this stage of the proceeding,
divest Capital Ventures of its alleged right to enforce the *Note*.

The injury is fairly traceable to the debtor's actions.  The
debtor is not paying Capital Ventures under the *Note*, and her
filing of this bankruptcy case has imposed the automatic stay on
Capital Ventures.  Moreover, relief from the automatic stay is
likely to redress that injury, because it will permit Capital
Ventures to pursue its legal remedies to collect on the debt it
alleges it is owed.  Capital Ventures has constitutional
standing.

*Real Party in Interest*

The debtor further challenges whether Capital Ventures is
the real party in interest.  Under 11 U.S.C. § 326(d), any "party
in interest" may seek the lifting of the automatic stay.  As I
explained in *Horton*, 595 B.R. at 4, regarding the right of
Wilmington Savings to stay relief in that case:

> Although some cases like *Roslyn Sav. Bank v. Comcoach
> Corp. (In re Comcoach Corp.)*, 698 F.2d 571 (2d Cir.
> 1983), "have unduly limited the availability of stay
> relief, the better approach is to recognize that any
> party affected by the stay should be entitled to move for
> relief." 3 Collier on Bankruptcy ¶ 362.07[2] at 362-106
> (16th ed. rev. June 2016) (footnotes omitted).
> Wilmington Savings asserts a right to foreclose against
> the debtor's real property, and the automatic stay
> currently bars it from pursuing that asserted right.

23

Because the automatic stay bars it from pursuing that asserted right, it is a party in interest without the necessity of its proving that it holds or owns the note at issue.

The debtor disputes Wilmington Savings' right under nonbankruptcy law to foreclose. Even if, as suggested by the misguided discussion in *Comcoach*, only the debtor or a creditor can be a "party in interest," the disputed nature of Wilmington Savings' claim that it has right under nonbankruptcy law to pursue a foreclosure action does not deprive Wilmington Savings of "party in interest" status. Under 11 U.S.C. § 101(5), the term "claim" includes a right to payment or right to an equitable remedy even if that right is disputed. Wilmington Savings is the holder of its claim of a right to foreclose, and thus a creditor as defined in 11 U.S.C. § 101(10). *See In re Smith*, 522 F. App'x 760, 765-66 (11th Cir. 2013) (holding that an entity had statutory standing because it alleged that it had a secured claim to payment, such that it was a creditor, as defined by the Bankruptcy Code).

Similarly, Capital Ventures is a party in interest because it claims it has a right to foreclose on the Property. The fact that the debtor disputes whether Capital Ventures has that right does not divest Capital Ventures of its status as a party in interest. The court is not required, for purposes of lifting the automatic stay, to determine whether Capital Ventures in fact has an interest in the Property or a right to foreclose on the debtor's real property. The court needs to determine only whether Capital Ventures has made a colorable claim to the Property. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994); *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990); *Veal v. American Home Mortgage Serv. Inc. (In re Veal)*, 450 B.R. 897, 914-15 (9th Cir. BAP 2011); *BHI*

24

*Int'l, Inc.,* 2012 WL 2501034, at *1 (Bankr. D.D.C. June 28, 2012); *In re Aniel*, 427 B.R. 811, 816 (Bankr. N.D. Cal. 2010). This is because a hearing on a motion to lift the automatic stay is meant to be a summary proceeding and not a plenary proceeding with "binding adjudication on issues of title, the effectiveness of liens, or the validity of the debtor's counterclaims." *BHI Int'l, Inc.*, 2012 WL 2501034, at *1.

The court in *Grella* 42 F.3d at 32, explained why a hearing on a motion to lift the automatic stay is a summary, not a plenary, proceeding.  The statute generally limits the determination to only three things; (1) whether there is adequate protection, (2) whether there is equity in the property, and (3) the necessity of the property for an effective reorganization; thereby showing the intent of Congress that the bankruptcy court's consideration be limited to these matters.  Moreover, the hearing on a motion to lift the automatic stay is meant to be quick.  Under § 362(e), a preliminary hearing must be held in 30 days, and a final hearing must be held within 60 days, or the stay is automatically lifted, unless the court extends the time. Additionally, a motion for relief from stay is made by motion, not by a separate adversary proceeding, and accordingly, should not carry the same weight as a plenary proceeding.  If a relief from stay proceeding were plenary, then the proceeding would have *res judicata* effect.  This would mean that the movant would be

25

required to raise any and all claims and allegations against the
debtor, and the debtor would be required to raise any and all
defenses and counterclaims against the movant, or be forever
barred from raising such claims and defenses in future
proceedings.

In short, the movant is required merely to present a
"colorable claim to property of the estate." *Grella*, 42 F.3d at
33. "If a court finds that likelihood to exist, this is not a
determination of the validity of those claims, but merely a grant
of permission from the court allowing the creditor to litigate
its substantive claims elsewhere without violating the automatic
stay." *Id.* at 33-34. Capital Ventures has presented a colorable
claim to the right to foreclose on the property.

Capital Ventures has met its prima facie burden by
presenting the *Settlement Agreement and Release*, wherein the
debtor acknowledged that Capital Ventures was the party entitled
to enforce the *Note*. The debtor challenges that the *Settlement
Agreement and Release* was obtained by fraud. Even if true, the
debtor is currently bound by the *Settlement Agreement and
Release*, until it is found that the *Settlement Agreement and
Release* was in fact induced by fraud. As already discussed
above, a hearing on a motion for relief from the automatic stay
is a summary hearing, and therefore, it is inappropriate for the
court to decide whether the *Settlement Agreement and Release* was

26

in fact entered into by fraud.

In any event, the debtor has not provided evidence of fraud. The *Settlement Agreement and Release* was negotiated with the debtor's attorney.  The debtor and her attorney had both been put on notice that the *Note* was lost when National Home Investors had filed its motion to amend the complaint on October 28, 2014, several months before the debtor executed the *Settlement Agreement and Release* on January 17, 2015.  Capital Ventures was not hiding anything from the debtor, or debtor's counsel.

Moreover, the issue of whether Capital Ventures is the holder of the *Note* with the right to enforce it is an issue that the bankruptcy court has inherent authority to abstain from hearing under 28 U.S.C. § 1334(c)(1).  This is a matter of state law, for which a state proceeding is pending, and as a matter of comity and judicial economy, it makes more sense for a Florida court to decide the issue of whether Capital Ventures is the holder of the *Note* under Florida law, than for a bankruptcy court, sitting in the District of Columbia, to decide that same issue.  The debtor can raise any defenses or claims concerning the validity of Capital Ventures claim to be the holder of the *Note* in the state court.

> 3.   The Argument that the *Loan Modification Agreement* is Ineffective Without Ronnie Having Joined in the *Agreement* is an Irrelevant Red Herring.

In her reply to the opposition to her *Motion to Stay*, the

debtor argues that because Ronnie never quitclaimed his interest in the Property to her, the *Loan Modification Agreement* is ineffective.  She argues that modifying the *Note* could only be effective if Ronnie joined in the *Loan Modification Agreement*. This argument is a red herring and frivolous because it fails to set forth any basis for setting aside the conclusions discussed above:

(1) The argument has no impact on the analysis under 11 U.S.C. § 362(d)(1) (concluding that cause exists to lift the stay because no bankruptcy purpose would be served by keeping the stay in place).  Similarly, the argument has no impact on the analysis under 11 U.S.C. § 362(d)(2) (concluding that there is no equity in the Property and that the debtor has not shown that the Property is necessary for an effective reorganization).

(2) To the extent that the debtor argues that under state law, Capital Ventures is not entitled to enforce the *Note* against Ronnie's interest in the Property, that argument is irrelevant.  Capital Ventures only needed relief from the stay to prosecute the prepetition foreclosure action against the debtor (an act otherwise stayed by 11 U.S.C. §§ 362(a)(1) and 362(a)(6)) and to enforce the *Mortgage* against the debtor's interest in the Property (an act otherwise stayed by 11 U.S.C. § 362(a)(4)) because the

28

debtor's interest in the Property is property of the estate
under 11 U.S.C. § 541(a)(1)).  For reasons set forth above,
relief from the stay imposed by those provisions was clearly
warranted, and no other provision in § 362(a) barred
pursuing the foreclosure action against the Property.  The
result is that nothing in § 362(a) bars Capital Ventures
from pursuing its foreclosure action against Ronnie or
enforcing its lien against Ronnie's interest in the
Property.  First, §§ 362(a)(1) and 362(a)(6) barred suing
the debtor to collect the debtor's debt in the foreclosure
action but they do not bar suing Ronnie as a co-defendant in
that action.  *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir.
1993).  Similarly, § 362(a)(4) barred enforcing the *Mortgage*
against the debtor's interest in the Property (which became
property of the estate under 11 U.S.C. § 541(a)), but it
does not bar enforcing the *Mortgage* against Ronnie's
interest in the Property.

(3) Even if the *Loan Modification Agreement* and the
*Settlement Agreement and Release* were ineffective as to
Ronnie, they are not ineffective as to the debtor with
respect to the provision treating Capital Ventures as the
holder of the *Note*.  Nothing in the debtor's argument alters
the court's conclusions regarding Capital Ventures' having
standing to seek to pursue an action against the debtor to

enforce the *Note*.

(4) The debtor's argument disregards that although Ronnie may still retain an interest in the Property of record, he is under an obligation to quitclaim the Property to the debtor, and Ronnie can be viewed in the foreclosure action as no longer having an interest in the Property. Moreover, the enforceability of the *Mortgage* against both the debtor's and Ronnie's interests in the Property is a state law issue that ought to be adjudicated in the state court foreclosure action, the only issue in the bankruptcy court being whether relief from the stay is appropriate to permit Capital Ventures to seek to show in state court that it is entitled to foreclose.

(5) The co-debtor stay of 11 U.S.C. § 1301 applies to seeking to collect the *Note* obligation from Ronnie. However, Capital Ventures is entitled to relief from the co-debtor stay because, within the meaning of § 1301(c)(2), "the plan filed by the debtor proposes not to pay such claim."[3]  Whether, as a matter of state law, Capital Ventures is entitled to enforce the *Note* and *Mortgage* against Ronnie's interest in the Property is irrelevant to

---

[3]    The codebtor stay was enacted, not to protect codebtors, but to prevent creditors from circumventing the automatic stay by putting indirect pressure on the debtor through her codebtor. *Morris v. Zabu Holding Company, Inc. (In re Morris)*, 385 B.R. 823, 829 n.8 (E.D. Va. 2008).

30

whether relief from the co-debtor stay is appropriate.

      4.   Capital Ventures' Failure to File a Proof of Claim
           Does Not Bar it From Seeking Relief From the
           Automatic Stay.

The debtor's argument that because Capital Ventures failed to file a proof of claim, it had no right to pursue its *Motion for Relief From Stay* was frivolous. As I noted in my oral decision, a creditor is not required to file a proof of claim in order to look to its lien to satisfy its claim. *In re Tarnow*, 749 F.2d 464, 465 (7th Cir. 1984). Upon failing to file a proof of claim, a secured creditor is not barred under the Bankruptcy Code from seeking relief from the automatic stay: nothing in 11 U.S.C. § 362(d) requires that a creditor have filed a proof of claim in order to obtain relief from the automatic stay pursuant to either § 362(d)(1) or § 362(d)(2). The court in *In re Hogan*, 346 B.R. 715, 723 (Bankr. N.D. Tex. 2006), held:

> This court recognizes that the holder of a secured claim
> has the option of relying solely on its lien in
> satisfaction of debtor's indebtedness and to therefore
> opt to decline to file a proof of claim if the secured
> creditor wants no distribution under a proposed plan.
> This court also acknowledges that, "[a] non-filing
> secured creditor who is not provided for under a plan is
> nevertheless bound to the terms of a plan in the sense
> that it is subject to the automatic stay...." *In re Lee*,
> 182 B.R. 354, 358 (Bankr. S.D. Ga. 1995). "[A] Chapter
> 13 debtor cannot remain in possession of a secured
> creditor's collateral during the pendency of its plan
> where the debtor's plan makes no provision for the
> creditor's value of its security and where the sole
> reason for the disallowance of the creditor's secured
> claim was the creditor's failure to file a timely proof
> of claim." *In re Lee*, 182 B.R. 354, 357 (Bankr. S.D. Ga.
> 1995); *Southtrust Bank of Alabama v. Thomas (In re*

31

*Thomas)*, 91 B.R. 117, 123 (N.D. Ala. 1988), *aff'd* 883
F.2d 991 (11th Cir. 1989). In *In re Thomas*, the district
court, affirmed in a one sentence conclusion by the
Eleventh Circuit, declared

> [Section] 1327(a) does not bar a secured
> creditor from seeking relief from stay where
> the creditor's claim is not provided for in
> the plan, the Chapter 13 debtor has minimal
> equity in the collateral, and the sole reason
> for disallowance of the creditor's claim is
> the creditor's failure to file a timely proof
> of claim.

*Id.* at 357-58.

The debtor relies on a discussion in 15 Collier on Bakruptcy

¶¶ 13-401.06, p. 13-401-14; 401.07, p. 13-401-15; and 302.08[1]

n. 9, p. 13-301-16 (14th ed.), a discussion (not carried forward

in the current edition of Collier on Bankruptcy) that was based

on two rules under the old Rules of Bankruptcy Procedure

developed under the Bankruptcy Act, and temporarily in force

after the Bankruptcy Code was initially enacted into law. Those

rules are no longer in force, and thus the discussion in the 14th

edition of Collier on Bankruptcy is no longer pertinent. One of

the rules, Rule 13-401(d), provided:

> (d) *Relief from Stay.* – On the filing of a complaint by
> a creditor who has timely filed his claim or who is
> secured by an estate in real property or chattels real
> seeking relief from a stay provided by this rule, the
> bankruptcy court shall, subject to the provisions of
> subdivision (e) of this rule, set the trial for the
> earliest possible date, and it shall take precedence over
> all matters except older matters of the same character.
> The court may for cause shown, terminate, annul, modify,
> or condition such stay. A party seeking continuation of
> a stay against lien enforcement shall show that he is
> entitled thereto.

32

Unlike this old rule, the current Federal Rules of Bankruptcy Procedure include no provision setting the filing of a proof of claim as a condition to the right to seek relief from the automatic stay.[4]

The other rule, Rule 13-302(e)(1) of the old Rules of Bankruptcy Procedure, required secured creditors to file a proof of claim, prior to the conclusion of the first meeting of creditors, regardless of whether the debtor listed the creditor in a Chapter XIII Statement.  That rule, however, addressed only the creditor's rights for purposes of voting and distribution in the Chapter XIII case.  As in the case of current Fed. R. Bankr. P. 3002(a), Rule 13-302(e)(1) did not address whether, when that rule applied to a creditor's claim, failure to file a claim precluded the creditor from seeking relief from the automatic stay.[5]

The Bankruptcy Code, the law today, provides under § 362(d)

---

[4]   Under Chapter XIII of the Bankruptcy Act, a claim secured by real property could not be dealt with by a Chapter XIII plan, and Rule 13-401(d) provided for seeking stay relief by a "creditor who has timely filed his claim **or** who is secured by an estate in real property or chattels real."  (emphasis added.) Unlike Chapter XIII of the Bankruptcy Act, Chapter 13 of the Bankruptcy Code permits a plan to address a claim secured by real property.  However, nothing in the Bankruptcy Code (specifically, in 11 U.S.C. § 362(d)) or the Federal Rules of Bankruptcy Procedure contemplates that filing a proof of claim is a prerequisite to pursuit of relief from the automatic stay.

[5]   Nor does current Fed. R. Bankr. P. 3002 (governing filing proofs of claim) bar seeking relief from the automatic stay when the creditor fails to file a timely proof of claim.

that:

> On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided
> under subsection (a) of this section, such as by terminating,
> annulling, modifying, or conditioning such stay.

The current law makes no provision regarding the filing of a
proof of claim as a predicate to seeking relief from the
automatic stay.  It only requires that a party in interest may
seek relief from the automatic stay, and as already discussed
above, Capital Ventures is a party in interest.

The debtor makes a great deal out of the fact that Fed. R.
Bankr. P. 3002(a) was amended to require all parties, including
secured creditors, to file a proof of claim.  However, Rule 3002
does not say anything about whether a secured creditor is barred
from seeking relief from the automatic stay if it fails to file a
proof of claim.  The Advisory Committee Note explained
"[s]ubdividion (a) is amended to clarify that a creditor,
including a secured creditor, must file a proof of claim in order
to have an allowed claim."  As explained in 4 Collier on
Bankruptcy ¶ 502.01 (16th ed. 2019):

> Section 502 is important because it provides the rules
> for determining allowability.  Holders of allowed claims
> may receive distributions in chapter 7 cases or under
> confirmed plans in chapter 9, 11, 12, and 13 cases.  Only
> holders of allowed claims may vote on chapter 11 plans
> under section 1126.  A claim holder's right with respect
> to a proposed plan are measured by the allowed amount of
> its claim under sections 943, 1129(b), 1225 and 1325 of
> the Bankruptcy Code.  Thus, the process of allowing and
> disallowing claims is an essential part of the bankruptcy
> process.

34

Throughout the Bankruptcy Code are provisions that permit only holders of allowed claims to participate in certain aspects of the bankruptcy process.  There is no statute that limits seeking relief from the automatic stay to holders of an allowed claim. As already discussed, any "party in interest" may seek relief from the automatic stay.

Moreover, Rule 3002(a), consistent with 11 U.S.C. § 506(d), recognizes that a lien is not invalidated merely because the creditor did not file a proof of claim.  This means that such a secured creditor retains all the rights that the secured creditor enjoyed under nonbankruptcy law (unless the creditor's lien is altered through an avoidance power or by the terms of a confirmed plan).

Only two cases that the debtor relies upon, *Citizens and Southern National Bank v. Rebuelta (In re Rebuelta)*, 27 B.R. 137 (Bankr. N.D. Ga. 1983), and *In re Montgomery*, 39 B.R. 541 (Bankr. E.D. Pa. 1984), concluded that a secured creditor's failure to file a proof of claim prohibited it from seeking relief from the automatic stay.[6]  Those decisions were in error.

They relied on the above-mentioned discussion in Collier on Bankruptcy (14th ed.) regarding old Rules  13-302(e)(1) and 13-401(d).  Those rules were adopted when the Bankruptcy Act was the

---

[6]  The other cases cited by the debtor focus on a secured creditor's right to distribution under a confirmed plan, when the creditor has failed to file a proof of claim.

35

controlling bankruptcy statute.  However, *Rebuelta* and *Montgomery*
were cases under the Bankruptcy Code.  Rules 13-302(e)(1) and 13-
401(d) were plainly invalid in cases under the Bankruptcy Code to
the extent that they imposed such a bar as nothing in the
Bankruptcy Code treats failure to file a proof of claim as
barring seeking relief from the stay under 11 U.S.C. § 362(d).[7]
Being inconsistent with 11 U.S.C. § 362(d), *Rebuelta* and
*Montgomery* were clearly in error in precluding a creditor's
obtaining relief from the automatic stay, in a case under the
Bankruptcy Code, when the creditor failed timely to file a proof
of claim.

In any event, *Rebuelta* and *Montgomery* clearly ceased to be

---

[7] Even in cases under the Bankruptcy Act, Rules 13-
302(e)(1) and 13-401(d) had no validity in barring a creditor's
seeking relief from the automatic stay when the creditor failed
timely to file a proof of claim.  Nothing in the Bankruptcy Act
suggested that in adopting a rule imposing an automatic stay
under the Rules of Bankruptcy Procedure, the rule could properly
bar relief from that stay if a creditor (for whom cause existed
warranting relief from the stay) failed to file a proof of claim.
*See In re Hines*, 20 B.R. 44, 49 (S.D. Ohio 1982) (holding that
"the right of a secured creditor to seek adequate protection is
not defeated by the procedural requirements of [Rule 13-
302(e)(1)].").  *See also In re Simmons*, 765 F.2d 547, 559 n.19
(5th Cir. 1985) (viewing Rule 13-302(e)(1) has having no impact
on the enforceability of a lien, and citing *In re Hines* with
approval).  Moreover, barring a creditor's seeking adequate
protection of its secured claim would be inconsistent with the
observation in *United States v. Sec. Indus. Bank*, 459 U.S. 70, 75
(1982), that "[t]he bankruptcy power is subject to the Fifth
Amendment's prohibition against taking private property without
compensation.  *Louisville Joint Stock Land Bank v. Radford*, 295
U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935)."  Putting an
injunction in place but not allowing relief from that injunction
to be sought is not what Congress intended.

36

of any precedential value once Rules 13-302(e)(1) and 13-401(d)
were no longer in force as in this case.  Upon those rules
ceasing to be in effect, no rule or statutory provision contained
a bar, based on a creditor's failure to file a proof of claim, to
that creditor's seeking relief from the automatic stay.  This is
particularly true after 11 U.S.C. § 506(d) was amended in 1984 to
clarify in § 506(d)(2) what was already the law, namely, that a
lien is not void based on disallowance of the claim for failure
to file a timely proof of claim.[8]

With its lien remaining unaffected by the failure to file a
proof of claim, Capital Ventures was entitled to relief from the
automatic stay based upon its having shown an entitlement to such
relief under 11 U.S.C. § 362(d)(1) or 11 U.S.C. § 362(d)(2).

B.   The Debtor has Not Shown Irreparable Harm if the Stay
     Pending Appeal is Not Granted.

The debtor asserts that she will be irreparably harmed
should a stay pending appeal not be granted because the
foreclosure would proceed and the debtor would lose all "adequate
remedy at law."  However, if the foreclosure is inappropriate,
the debtor has all the protections afforded her by nonbankruptcy

---

[8]   Such a lien continues unaffected, subject, however, to
any confirmed plan that modifies the rights of the lienholder or
to any avoidance powers of a trustee.  Here, the debtor's
proposed *Plan* does not set forth a modification of the rights of
the lienholder; the trustee has not sought to avoid the lien; and
nothing in the avoidance provisions in Chapter 5 of the
Bankruptcy Code provides a basis, in any event, for avoidance of
the lien.

law in a nonbankruptcy forum to stop an inappropriate foreclosure from happening.  If Capital Ventures indeed does not have a right to foreclose on the property, then the debtor can raise any defenses the debtor may have against a foreclosure on her real property, including Capital Ventures' alleged lack of standing, in Capital Ventures' foreclosure action in the state court.  With these protections in place, the debtor has not shown that there will be irreparable harm if the court should deny the stay pending appeal.

     C.    The Debtor Has Not Shown an Absence of Harm to Others
           if the Stay Pending Appeal is Granted.

If the stay pending appeal should be granted, Capital Ventures would be further delayed in pursuing its remedies, a foreclosure action, in collecting any debt it may be owed.  Based on the time value of money (a dollar paid today is worth more than a dollar paid years later), it is obvious that Capital Ventures would be harmed by its being stayed from proceeding to pursue foreclosure.  Paying interest that accrues on a note is a way of assuring that a creditor will receive the present value of its claim.  However, as already discussed above, there is no equity in the Property from which future interest accruing on the *Note* will be paid.  The debtor has not sought to address paying the *Note* under a Chapter 13 plan.  The delay caused by the stay is unnecessary for purposes of administration of the debtor's proposed *Plan* and only causes more harm to Capital Ventures in

38

delaying its obtaining an adjudication of its rights under the
*Note* and the *Mortgage*.

    D.   The Public Interest Weighs in Favor of Denying a Stay
        Pending Appeal.

The public interest weighs in favor of denying a stay
pending appeal.  Whether Capital Ventures is indeed the holder of
the *Note* entitled to enforce the *Note* is a state law issue.  As
evidenced by 11 U.S.C. § 1334(c)(1), in the interest of comity
and based on respect for Florida law, it is in the public
interest to allow that issue to be decided in the pending
foreclosure action in the Florida state court, unless there is a
bankruptcy reason to keep the automatic stay in place.  The
debtor's proposed *Plan* is not proposing to pay the *Note*, and with
the debtor having no equity in the Property that might be
realized for the benefit of the bankruptcy estate, there is no
bankruptcy reason to keep the automatic stay in place.  The
public interest weighs in favor of allowing a secured creditor to
pursue foreclosure in state court when there is no bankruptcy
reason to keep the automatic stay in place.

IV

CONCLUSION

For all these reasons, a stay pending appeal is clearly
unwarranted.  It is

ORDERED that the debtor's *Motion to Stay Court's October 2,
2019 Order Pending Appeal and for an Immediate Administrative*

39

*Stay* (Dkt. No. 99) is DENIED.

[Signed and dated above.]

Copies to: Debtor (by hand-mailing unless she has succeeded in becoming entitled to e-notification of filings); recipients of e-notifications of filings.